Petition For Writ of Mandamus Denied and Memorandum Opinion filed
October 30, 2003
















Petition For
Writ of Mandamus Denied and Memorandum Opinion filed October 30, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-03-00878-CV

____________

 

IN RE DARREN MACK, Relator

 

_______________________________________________

 

Original
Proceeding

Writ of Mandamus

_______________________________________________

 

 

M E M O R A
N D U M   O P I N I O N

            A baby, H.F., was abandoned at Texas
Childrens’ Hospital in Houston.[1]  In November 2001, respondent, the Honorable
Pat Sheldon, judge of the 313th District
 Court of Harris County, Texas, signed a
default judgment terminating all parental rights to H.F.  Real Party in Interest, C.J.F., then adopted
H.F.  Relator, Darren Mack, claims that
H.F. is his daughter, K.A.D., who was kidnapped in Louisiana in June
2001 by her birth mother, Lisa DiMarco, taken to Houston and
abandoned.  

 

            According to relator, he and DiMarco
had a relationship, and she became pregnant. 
She wanted to give the child up for adoption, but relator would not
consent and insisted he would raise the child. 
DiMarco gave birth to K.A.D. on March 2, 2001 in Jefferson Parish, Louisiana.  Relator immediately signed an act of
legitimation and filed a petition for paternity, custody, and name change in a
Jefferson Parish court.  A few days
later, DiMarco gave physical custody of the child to relator, and he raised her
for three months.  Then, DiMarco picked
up the child for a visit but did not return her.[2]

            Over the next two years, DiMarco
refused to divulge the child’s whereabouts despite numerous orders by the
Jefferson Parish court.[3]  Finally, in April 2003, after being
imprisoned for contempt, DiMarco admitted that she left the child at the St.
Luke’s “children’s hospital” in Houston in July
2001 so she could be adopted.  Relator
claims that based on information from DiMarco’s attorney, he discovered that
H.F. is K.A.D., and all parental rights to the child had been terminated in the
underlying Harris County proceeding.

            Relator filed a special appearance and
motion to vacate the termination order in the underlying proceeding asserting
the order is void for lack of jurisdiction because the Jefferson Parish court
had jurisdiction over H.F./K.A.D. under the Uniform Child Custody Jurisdiction
and Enforcement Act[4] and
the Parental Kidnapping Prevention  Act.[5]  C.J.F. filed a plea in bar and motion to
dismiss on two grounds: (1) relator lacks standing to challenge the termination
order; and (2) his challenge is barred by section 161.211 of the Texas Family
Code.  Respondent held a hearing on the
plea in bar and motion to dismiss but did not consider any evidence.  On August 7, 2003, he signed an order granting the
plea in bar and motion to dismiss but did not specify on what grounds.  Relator then filed this mandamus petition
requesting that we vacate this order.

            Relator’s assertions raise serious
constitutional and procedural questions. 
When C.J.F. challenged relator’s standing by a plea to the jurisdiction,
the trial court could not weigh the claim’s merits but was required to consider
only relator’s pleadings and the evidence pertinent to the jurisdictional
inquiry.  Texas Natural Res. Conservation Comm’n v. White, 46 S.W.3d
864, 868 (Tex. 2001); Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 554-55 (Tex. 2000).  A reviewing court is required to construe the
pleadings in relator’s favor and look to his intent.  County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex.
2002).  Here, it is hard to see how the
trial court could rule on relator’s allegations without compelling at least
some DNA testing and evidence as to whether relator is indeed related to H.F.,
and therefore has standing to challenge the termination order.[6]

            C.J.F. also asserted relator’s
challenge to the termination order is barred by section 161.211 of the Texas
Family Code.  Section 161.211 generally
prohibits a direct or collateral attack on a termination order more than six
months after it is signed.  See Tex.
Fam. Code Ann. § 161.211 (Vernon 2002); see also Tex. Fam. Code Ann.
§ 162.012 (Vernon 2002) (prohibiting attack on adoption order after six
months).  However, the application of
section 161.211 in this case raises constitutional concerns.  Relator could not have challenged the
termination order within six months because—despite his diligent efforts and
due solely to DiMarco’s contemptuous silence—he had no notice the child was
anywhere in or near Texas until almost two years later.  If relator’s allegations are true, he
attempted to establish paternity, obtain custody, and assume parental responsibilities
at the child’s birth; however, he was prevented from doing so because DiMarco kidnapped
the child and refused to reveal her whereabouts in defiance of court orders
until it was allegedly too late for relator to challenge the termination.  Relator could not have filed in the Texas paternity
registry to ensure notice of the termination proceeding when he did not know
where the child was.  In these
circumstances, there may be constitutional problems with the application of the
general statutes.  See Laura Oren, Righting
Child Custody Wrongs: The Children of the “Disappeared” in Argentina, 14 Harv. Hum. Rts. J. 123, 167 n.240
(suggesting that despite sections 161.211 and 162.012 of the Texas Family Code
promoting finality in termination and adoption proceedings, the Due Process
Clause of the United States Constitution and the Due Course of Law and Open
Courts provisions of the Texas Constitution may allow a challenge to an
adoption on the grounds it was based on kidnapping).

            Nevertheless, for reasons not
explained in the record, relator did not appeal from respondent’s August 7, 2003 order
dismissing his claims, although he could have done so.  See
Tex. Fam. Code Ann. § 109.002 (b)
(Vernon 2002) (providing any party to a suit affecting the parent-child
relationship may appeal a final order rendered therein).  Because he had an adequate remedy by appeal
that he did not pursue, we must deny his petition for writ of mandamus.  See
Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).

 

                                                                                    PER
CURIAM

 

Petition
Denied and Memorandum Opinion filed October 30, 2003.

Panel
consists of Chief Justice Brister and Justices Anderson and Seymore.

 











            [1]  The record does not reflect the date H.F. was
found at the hospital, but the Texas Department of Protective and Regulatory
Services filed the suit to terminate parental rights to H.F. in July 2001.





            [2]  The court had not yet acted on relator’s
petition but had issued a temporary restraining order precluding DiMarco from
removing the child from the jurisdiction of the court pending the custody
hearing.





            [3]  The court ordered that DiMarco produce the
child, reveal the location of a man named “Chorentale” whom she claimed at one
point to be the father, take a lie detector test, submit to drug testing,
produce an investigator trying to locate Chorentale, provide the names of her
closest friends, and provide her bank account and credit card statements.  There were many continuances, at DiMarco’s
request, between these various orders that caused the process to last almost
two years.





            [4]  See
generally Tex. Fam. Code Ann.
§ 152.001-.317 (Vernon 2002) (precluding a state from exercising jurisdiction
over a child when the child’s home state is already exercising jurisdiction).





            [5]  See
generally 28 USCA §1738A(g) (precluding a state from exercising
jurisdiction over a child to make custody determinations while a proceeding
regarding the child is pending in another state). 





            [6]  Among other relief, relator requested that
respondent order DNA testing of H.F.